**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | No. CR-11-02729-001-TUC-DCB (JR) |
| Plaintiff, | **ORDER** |
| v. | |
| Marcos Antonio Cruz, | |
| Defendant. | |

The Court denies the Motion for Compassionate Release because the Defendant is a danger to the community.

The Defendant filed a Motion for Compassionate Release due to COVID-19. Defendant had a stroke and other medical conditions, which include at least two medical reasons he is considered high risk for becoming seriously ill or dying if he contracts the virus. Counsel was appointed and supplemented the pro se motion. (Docs. 699, 701.)[1]

Defendant is 59 years old and housed at the Federal Medical Center Rochester in Minnesota to accommodate his health conditions, including incapacity due to his stroke. He is wheelchair and bed bound. He has currently served 84 months or 70% of the original 120-month sentence which this Court imposed on April 1, 2014. His motion seeks early release, and he proposes he can live with his sister.

To be eligible for compassionate release, the Defendant must demonstrate: (1) the existence of extraordinary and compelling reasons, within the meaning of the statute; and

---

[1] Also pending, the Defendant filed a Motion for Status (Doc. 700) which is moot given the Court's appointment of counsel and allowance for supplemental briefing.

(2) that he is not a danger to the community. 18 U.S.C. § 3582(c)(1)(A). The statute also expressly provides that the Defendant file a motion with this Court only "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons [(BOP)] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier ...." *Id.*

The Defendant bears the burden of proving he meets all elements of eligibility, both substantive and procedural, for a sentence reduction. *Id.*; *United States v. Hamilton*, 715 F.3d 328, 337 (11th Cir. 2013) ("defendant, as the § 3582(c)(2) movant, bears the burden of establishing" eligibility for sentencing reduction); *United States v. Butler*, 970 F.2d 1017, 1026 (2d Cir. 1992) ("A party with an affirmative goal and presumptive access to proof on a given issue normally has the burden of proof as to that issue.").

The statute requires that any reduction be "consistent with applicable policy statements issued by the Sentencing Commission addressing the merits in the case, including the explicit definition in U.S.S.G. § 1B1.13 for "extraordinary and compelling reasons" that may make a defendant eligible for compassionate release. Relevant here, those include (1) a "terminal illness"; (2) a serious medical condition "that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he [] is not expected to recover"; or (3) a defendant who is at least 65 years old, is experiencing a serious deterioration in physical or mental health because of the aging process, and "has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less." U.S.S.G. § 1B1.13, n.1 (other grounds omitted).

The defendant does not fit any of these criteria, but he has two medical conditions identified by the CDC as placing him at increased risk of severe illness from COVID-19: hypertension and mild vascular dementia. The Court does not construe the "extraordinary and compelling reasons" under 18 U.S.C. § 3582(c)(1)(A) and U.S.S.G. § 1B1.13, to allow relief only for a "terminal illness" or "a serious medical condition that substantially

diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." Such a limited view of compassionate release would make it unavailable for COVID-19 high-risk inmates until they contracted the virus and death appeared imminent. Instead, the Court applies the Sentencing Guidelines' catch-all provision, which allows the Court to find an "extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." U.S.S.G. § 1B1.13 Application note 1(D).

The Court must determine whether the two conditions, hypertension and mild vascular dementia, together with his other medical problems associated with his prior stroke, are extraordinary and compelling reasons warranting immediate release.

Generalized and speculative concerns about possible exposure to COVID-19 do not meet the criteria for extraordinary and compelling reasons for a reduction in sentence. This Court follows the third circuit's guidance in *United States v. Raia*, 954 F.3d at 597, which explained that the courts should not minimize the risks that COVID-19 poses in the federal prison system, particularly to inmates with high-risk COVID-19 medical conditions, but "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and profession efforts to curtail the virus's spread." *Raia*, 954 F.3d at 597; *see also, e.g., United States v. Ebherhart*, 2020 WL 1450745, at *2 (N.D. Cal. Mar. 25, 2020) ("General concerns about possible exposure to COVID-19 do not meet the criteria for extraordinary and compelling reasons for a reduction in sentence…."). In other words, a prisoner, who has CDC-identified risk factors for COVID-19 does not automatically warrant compassionate release. This is true even for defendants housed at facilities with confirmed COVID-19 cases. *See United States v. Korn*, 2020 WL 1808213, at *6-8 (W.D.N.Y. Apr. 9, 2020) (denying compassionate release notwithstanding at least 40 COVID-19 confirmed cases and defendant had serious heart condition that made him more susceptible to COVID-19); *Riley v. United States*, 2020 WL

1819838 (W.D. Wash. Apr. 10, 2020) (denying compassionate release to inmate with HIV-AIDS and prostate cancer also housed at FMC Butner).

Here, the Court looks to the BOP's two determinations denying the Defendant's administrative requests for compassionate release. The administrative review process plays a crucial role because for each compassionate release request, BOP carefully considers the inmate's medical condition and also his plan for release, among other things. *See* BOP Program Statement 5050.50 (January 17, 2019), Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§ 3582(c)(1)(A) and 4205(g). Again, the Court turns to the Third Circuit and *Raia* for guidance, and its conclusion to strictly adhere to exhaustion requirements: "Given BOP's shared desire for a safe and healthy prison environment, we conclude that strict compliance with § 3582(c)(1)(A)'s exhaustion requirement takes on added—and critical— importance." *Raia*, 954 F.3d at 597. The Court notes that twice the Defendant was administratively denied relief. The Court has reviewed the logic for those determinations that he did not qualify for compassionate release.

In short, he is confined at Federal Medical Center Rochester in Minnesota due to serious medical conditions, including hypertension and mild vascular dementia and other medical conditions associated with his pre-incarceration 2010 stroke. He is housed in a medical impatient unit because he needs extra time to accomplish daily tasks and to allow medical staff to assist him when needed. It appears that he can, however, self-propel and transfer in and out of his wheelchair independently. There is no indication that the Defendant needs to be released from custody in order to obtain more appropriate or necessary medical care. He has not tested positive for COVID-19. According to the Government, "at the Rochester FHC, where the defendant is housed, there are currently 3 persons who have tested positive for COVID-19, none who have died, and 102 inmates who gave recovered since the outbreak of the pandemic. (Response (Doc. 706) at 7.)

The Court finds that the BOP is in the best position to verify the Defendant's medical claims of debilitation and that he does not have any serious medical condition that

substantially diminishes his ability to provide self-care within the environment of Rochester FHC. He presents nothing more than generalized and speculative concerns about possible exposure to COVID-19.

More importantly, the Court finds that the Defendant is not eligible for compassionate release because he is a danger to the community; a district court may not reduce a sentence unless it finds that "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." USSG § 1B1.13. Danger to the community is not limited to physical violence, it encompasses pecuniary or economic harm. *See, e.g., United States v. Reynolds*, 956 F.2d 192, 192 (9th Cir. 1992) ("[D]anger may, at least in some cases, encompass pecuniary or economic harm."); *United States v. Gentry*, 455 F. Supp. 2d 1018, 1032 (D. Ariz. 2006).

Here, the Defendant was sentenced for Conspiracy to Possess with Intent to distribute more than 1,000 kilograms of marijuana to a mandatory minimum of 10 years based on the large quantity of marijuana involved in the drug offense. He was, however, originally charged with a Continuing Criminal Enterprise, which carried a mandatory minimum sentence of 20 years. The facts of the offense are as follows: "the defendant committed the offense for which he was convicted here at the same time he was on supervised release for a narcotics offense following his release from prison also for a narcotics offense. He committed this offense in part from his hospital bed after he suffered from a massive stroke." (Response (Doc. 706) at 13-14.) The Defendant makes much of the fact that marijuana is now legal, but the risk to the community is found in his willingness to participate in a sophisticated criminal conspiracy, what was essentially a continuing criminal enterprise. This offense was not a one-off, his criminal history presented at the time of sentencing reflected repeated drug trafficking offenses.[2] Large-

---

[2] "The Presentence Report (PSR) paragraph 11 noted: "Marcos Cruz has been hospitalized after suffering from a stroke on December 23, or 24, 2010. On February 15, 2011, Cruz introduced Angel Alberto Rodriguez-Morales, also known as 'Coki' to the CS in the hospital room where Cruz was recovering from the Stroke." The PSR writer concluded that the defendant was a Base Offense Level 36 based on 12,191.9 kilograms of marijuana. To this tally, the PSR added four levels and because the defendant was an organizer or leader in criminal activity that involved five or more participants or was otherwise extensive. USSG ¶ 3B1.1 (a). . . . The defendant had a prior conviction for conspiracy to distribute 5

scale criminal enterprises, involving large amounts of dangerous drugs, are the type that pose considerable danger to the community. *United States v. Stone*, 608 F.3d 939, 947 (6th Cir. 2010), *United States v. Hare*, 873 F.2d 796, 798 (5th Cir.1989) (stating that "[t]he risk of continued narcotics trafficking while on bail constitutes a risk to the community"), *United States v. Leon*, 766 F.2d 77, 81 (2d Cir.1985) ( "[I]t is clear that the harm to society caused by narcotics trafficking is encompassed within Congress' definition of 'danger'").

The offense of conviction and the facts of the offense support this Court's finding that the Defendant is a danger to the community, and accordingly, the Court may not grant the motion for compassionate release.

**Accordingly,**

**IT IS ORDERED** that the Motion for Compassionate Release (Doc. 699) is DENIED.

**IT IS FURTHER ORDERED** that the Motion for Status (Doc. 700) is DENIED AS MOOT.

Dated this 22nd day of February, 2021.

David C. Bury
United States District Judge

---

kilograms or more of cocaine on August 20, 1990, for which he was sent to prison for 235 months, and for which his supervised release was terminated on September 6, 2011 [because of the stroke]. (It is important to consider that at the time the defendant committed the acts for which he was convicted in this case he was on Supervised Release.) Unbeknownst to the probation authorities until after the termination of supervised release, defendant had been arrested in this case on August 9, 2011." (Response (Doc. 706) at 3-4.)